[No. 1,940.]

# MARGARET BRIODY *v.* T. D. CONRO AND JOSHUA HILTON.

COLLUSIVE ATTACHMENT CONFERS NO RIGHT AGAINST SUBSEQUENT BONA FIDE ATTACHMENT.—Where a member of a firm in failing circumstances made a firm note to his sister for a personal debt of his own to her, but which was barred by the Statute of Limitations, and procured her to sue the firm upon it, and attach the firm property, and he advanced the costs of suit, and had the property bid off in her name, and it was plain, from the circumstances, that the proceedings were collusive, and that the firm, as a firm, owed her nothing; *held,* that no title passed by such attachment and sale as against subsequent attaching creditors of the firm.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

The cause was tried by jury in the Court below, and there was a verdict for the plaintiff. The main ground of defendants' motion for a new trial and on this appeal was insufficiency of the evidence to justify the verdict and judgment; and the briefs of counsel were chiefly directed to abstracting and discussing the weight of the evidence.

The other facts are stated in the opinion of the Court.

*Eugene B. Drake,* for Appellants.

*Elisha Cook,* for Respondent.

By the Court, WALLACE, J.:

This is an action for the recovery of certain personal property—the liquors, groceries, etc., formerly belonging to the copartnership of Briody & Pardee, in San Francisco. The defendants, judgment creditors of the copartnership, levied an execution upon these goods, and sold them to satisfy their debt. The plaintiff (a sister of John Briody, one of the members of the firm of Briody & Pardee) thereupon brought this action, and recovered a judgment for the

possession of the property, etc.; and a motion of defendants for a new trial having been denied, this appeal is taken from the judgment and the order denying the new trial.

It appears from the evidence given at the trial that Briody & Pardee were in failing circumstances; that the demand of the defendants, upon which they afterward recovered judgment, had been presented to them for collection, and that they had promised to pay it on the 16th day of June, 1865. On that day two attachments were levied upon the property of the firm of Briody & Pardee, the writs issuing in actions commenced in the Court of a Justice of the Peace—one in the name of the plaintiff Margaret as plaintiff, the other in the name of one Brower as plaintiff. The action in the name of the plaintiff, Margaret, was brought upon a promissory note executed, or purporting to be executed, to her or to her order, by Briody & Pardee, bearing date May 1st, 1865, for the sum of three hundred dollars, payable thirty days after date, without grace, and bearing interest at the rate of one and one half per cent per month from date until paid. The action brought in the name of Brower as plaintiff was brought upon another note, similar upon its face to the first in all respects, except that it bore date June 1st, 1865, and fell due fifteen days after date. It purported to have been made to the plaintiff, Margaret, as payee, and indorsed by her to Brower. The indorsement made of this note to Brower was made by the plaintiff, Margaret, at the suggestion of Harding, a Constable, who advised that both suits should not be commenced in her name, but that one of them be commenced in the name of Brower. The dates borne by the notes were false in fact—they were both of them really made on the 16th day of June, 1865, being drawn up by Harding, the Constable, and antedated by him, the very day upon which they were put in suit. It appears that upon that day one Brownell applied to Harding to have an

action brought against Briody & Pardee upon "a note for five hundred dollars or six hundred dollars." Harding informed him that a demand so large in amount as that exceeded the jurisdiction of a Justice of the Peace, and thereupon the notes in suit were prepared and executed, one of the notes indorsed to Brower, and the attachments immediately issued, one in the name of the plaintiff, the other in that of Brower as plaintiff. Harding, the Constable, when executing these writs of attachment against the firm of Briody & Pardee, collected of the latter the costs of both suits—John Briody taking the money out of the drawer in the store to pay him these costs. A keeper was placed in charge, but the store was not closed; in fact, the business of the firm proceeded as usual. No defense to the actions brought by the plaintiff and by Brower being made by Briody & Pardee, judgments by default were promptly entered, to wit, June nineteenth, and executions, immediately issued thereon, were at once levied upon the liquors, groceries, etc., in the store, and also upon a horse and wagon used in conducting the business. A sale could not, however, have ordinarily taken place until after an advertisement of five days, as required by the statute regulating sales of personal property upon execution; but the defendants stipulated to waive the advertisement required by law, and the sale accordingly took place on the twenty-first of June. The proceedings at the sale seem to have fallen into some confusion, notwithstanding the evident anxiety of the defendants in execution that it should be both speedy and effective. At the request of John Briody, the Constable exposed to sale the property of the firm, consisting of liquors, groceries, etc., including horse and wagon, in one entire lot, and, according to the understanding of the Constable making the sale, the plaintiff, Mar-

garet, and her brother-in-law, McCabe, were the purchasers of the entire lot of property offered. Neither of the supposed purchasers were present at the time. McCabe, who was called as a witness by the plaintiff, swears that he was not interested in the purchase in anywise, did not authorize any one to bid for him thereat, and did not hear that the sale had been made until three or four days after it took place. Patrick Wade, also a witness for the plaintiff, states that he was present at the sale, and that one Brooks and one Foley bid off the property, the *witness understood*, for the plaintiff. Brooks was not called as a witness, nor was Foley, to prove any authority from the plaintiff, or request by her to them, or either of them, to bid for her at the sale. The plaintiff herself swore, on her cross-examination, that she " did not employ any one to bid in the property." She says that McCabe, her brother-in-law, told her that " he would attend to it." We have already seen, however, that McCabe was wholly ignorant of the sale having taken place; and the bidding for the plaintiff, Margaret, must have, therefore, been done at the instance of some one else; it is exceedingly probable that it was at the instance of John Briody, who had already paid the costs, stipulated that the sale might proceed immediately, and without the usual advertisement, and instructed the Constable to sell in one entire lot. The circumstances after this pretended sale are such as would have naturally been anticipated. John Briody still remained in the store as usual. Patrick Wade, a witness for the plaintiff, says: " Mr. John Briody was there all the time, off and on, after the Harding sale. He had no other business that I know of." This witness is the person who, it is claimed, was placed in charge of the goods for the plaintiff, Margaret, after the sale.

When the officer, afterwards, went to levy the attachment of the defendants, he found John Briody behind the counter, " waiting upon customers." These, and a variety

of other circumstances, appearing in the record, as significant as these, clearly show that the whole of the proceedings resulting in the pretended purchase of the goods in the name of the plaintiff were collusive merely; that the suits instituted in her name, and in that of Brower, as her assignee, were really commenced and carried on at the procurement of John Briody himself, and that the firm of Briody & Pardee really owed her nothing whatever.

The judgment and order denying a new trial must be reversed, and the cause remanded; and it is so ordered.

Neither Mr. Justice SPRAGUE nor Mr. Justice TEMPLE participated in the foregoing decision.